*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ASHLEY ANN PIERCE,

      Plaintiff-Appellant,

v

JOSHUA DANIEL DEGLOPPER,

      Defendant-Appellee.

UNPUBLISHED
March 16, 2023

No. 362243
Allegan Circuit Court
LC No. 2014-052793-DC

Before: M. J. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

Plaintiff, Ashley Pierce, proceeding *in propria persona*, appeals as of right the June 28, 2022 postjudgment custody order, which awarded defendant, Joshua DeGlopper, joint physical custody and sole legal custody of the parties' minor children. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

Pierce and DeGlopper have two children together. In 2014, Pierce filed a complaint for child support that resulted in a court order regarding support which also awarded the parties joint legal custody and awarded Pierce primary physical custody. The order was modified in May 2020. Under that order, the parties continued to have joint legal custody, Pierce continued to have primary physical custody, and DeGlopper received parenting time for three days every other weekend plus Wednesday evenings.

On December 27, 2021, DeGlopper filed an ex parte motion to change custody and parenting time and to suspend Pierce's parenting time. In his motion, he alleged that Pierce (1) failed to send the children to school; (2) made significant parental decisions without consulting him; (3) denied him parenting time; (4) disparaged him and allowed the children to not attend parenting time with him; and (5) failed to obtain appropriate medical care for their son after he sustained a concussion. The court granted the motion and entered an ex parte order awarding

-1-

DeGlopper sole physical and legal custody, with weekend parenting time for Pierce.[1]  The temporary, ex parte order also provided that the children, who had been participating in an online program, must return to their former school.

Pierce objected to the court's ex parte order and requested an evidentiary hearing. Following the hearing, the court entered a permanent custody order that provided DeGlopper and Pierce with joint physical custody and DeGlopper with sole legal custody.  This appeal follows.

## II.  INVOLUNTARY DISMISSAL

In his brief on appeal, DeGlopper argues that Pierce's claim of appeal should be dismissed because she failed to timely file her appellant brief.  However, DeGlopper makes this argument in his statement of facts, contrary to the appellate briefing rules, which require facts to be "stated without argument or bias."  See MCR 7.212(C)(6).  Additionally, if DeGlopper wanted to move for dismissal of Pierce's appeal on the basis that she failed to pursue her appeal in conformity with the court rules, see MCR 7.211(C)(2)(b), the appropriate course was to file a motion in this Court under the motion procedures in MCR 7.211, which he failed to do.  Moreover, the appeal has been briefed by both sides and it is ready for a decision from this Court, and DeGlopper has not even attempted to identify how he was prejudiced by Pierce's delay.  In these circumstances, we do not deem dismissal under MCR 7.216(A)(10) to be just.  Consequently, DeGlopper's procedurally improper request to dismiss is denied.

## III.  JURISDICTION

## A.  STANDARD OF REVIEW

Questions related to a trial court's jurisdiction are reviewed de novo.  *Bank v Mich Ed Ass'n-NEA*, 315 Mich App 496, 499; 892 NW2d 1 (2016).  Likewise, we review de novo the scope of this Court's jurisdiction.  *In re McCarrick/Lamoreaux*, 307 Mich App 436, 445; 861 NW2d 303 (2014).

## B.  SCOPE OF THE APPEAL

On appeal, Pierce raises multiple challenges to the trial court's December 2021 ex parte order changing custody.  However, as explained in *Surman v Surman*, 277 Mich App 287, 294; 745 NW2d 802 (2007), under our court rules, an order changing custody need not be a permanent order to constitute a final order under MCR 7.202(6)(a)(*iii*).  "When a final order is entered, a claim of appeal from that order must be timely filed.  A party cannot wait until the entry of a subsequent final order to untimely appeal an earlier final order."  *Surman*, 277 Mich App at 294. Here, after the entry of the December 2021 ex parte order, the trial court held an evidentiary hearing and, subsequently, entered a new order changing custody.  Pierce's claim of appeal is

---

[1] The court improperly entered this temporary order changing custody without holding an evidentiary hearing and without making any of the findings required by the Child Custody Act, MCL 722.21 *et seq*.  As will be explained below, however, Pierce did not timely appeal the order and our review is limited to the court's subsequent permanent custody determination.

limited to appealing issues arising from the subsequent custody order. Accordingly, as the issues related to the December 2021 ex parte order are not properly before this Court, we will not address them.

## C. CIRCUIT COURT'S JURISDICTION

Next, Pierce argues that the trial court lacked jurisdiction to modify custody because the court failed to follow the procedures in the Child Custody Act. This argument is without merit. "Subject-matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending and is not dependent on the particular facts of a case." *Harris v Vernier*, 242 Mich App 306, 319; 617 NW2d 764 (2000). "[C]ircuit courts are courts of general jurisdiction, with original jurisdiction to hear and determine all civil claims and remedies," unless "jurisdiction is given exclusively by constitutional provision or by statute to another court." *Bowie v Arder*, 441 Mich 23, 50; 490 NW2d 568 (1992). The Child Custody Act "applies to all custody disputes and vests the circuit court with continuing jurisdiction." *Harvey v Harvey*, 470 Mich 186, 192; 680 NW2d 835 (2004), citing MCL 722.26. See also MCL 600.1021(1)(g). "Once the circuit court takes jurisdiction over a child and issues an order pursuant to the act, the court's jurisdiction continues until the child is eighteen years old." *Bowie*, 441 Mich at 53, citing MCL 722.27(1)(c). Thus, the parties' child custody dispute falls within the class of custody disputes over which the circuit court had continuing jurisdiction.

Although, Pierce asserts that jurisdiction was lacking because the trial court failed to follow the proper procedures and to make the findings required to modify custody under MCL 722.27(1)(c), her complaints in this regard do not evince an absence of jurisdiction. Rather, she has simply identified potential errors in the trial court's exercise of jurisdiction. There is "a wide difference between a want of jurisdiction, in which the court has no power to adjudicate at all, and a mistake in the exercise of undoubted jurisdiction, in which case the action of the trial court is not void, although it may be subject to direct attack on appeal." *Altman v Nelson*, 197 Mich App 467, 472-473; 495 NW2d 826 (1992). "Jurisdiction to make a determination is not dependent upon the correctness of the determination made." *Id*. at 473. Instead, "[i]f the court has jurisdiction of the parties and of the subject matter, it also has jurisdiction to make an error." *Id*. Pierce's contention that the court lacked subject matter jurisdiction because it misapplied the Child Custody Act, therefore, is without merit.

Pierce also asserts that the trial court lacked jurisdiction because there were pending child protective proceedings when defendant moved for an ex parte order, and once a court obtained jurisdiction in the child protective proceedings, the circuit court could no longer enter orders in this custody dispute. We disagree. First, although Pierce asserts in her brief that a child protection petition was filed in September 2020, those proceedings were not part of the lower court file in this case, and they are not part of the record that forms the basis for this Court's review. See MCR 7.210(A). Second, multiple courts can have concurrent jurisdiction in situations related to the custody of a child as compared to child protective proceedings. See *Krajewski v Krajewski*, 420 Mich 729, 733-734; 362 NW2d 230 (1984); *In re DaBaja*, 191 Mich App 281, 290-291; 477 NW2d 148 (1991). Pierce has not shown that the court—which had continuing jurisdiction over this custody dispute since 2014—was divested of jurisdiction by the filing of a child protective petition.

## IV. DUE PROCESS

Pierce generally asserts that she was denied due process. However, the record shows that she did receive an evidentiary hearing, including notice and an opportunity to be heard, before entry of the June 2022 order. *See Mann v Mann*, 190 Mich App 526, 533; 476 NW2d 439 (1991) ("Our conclusion that the trial court committed clear legal error [in erroneously changing custody in an ex parte temporary order] does not, however, compel us to reverse the court's final order changing custody, because a hearing de novo was eventually held."). She was not denied due process.

Additionally, there is no merit to Pierce's argument that the trial court deprived her of her fundamental parental rights and failed to apply a presumption in favor of a natural parent over an established custodial environment. Although not entirely clear, Pierce's argument seems to implicate *Hunter v Hunter*, 484 Mich 247, 263; 771 NW2d 694 (2009), and the interplay between the presumption in favor of parental custody stated in MCL 722.25(1) and the presumption in favor of an established custodial environment in MCL 722.27(1)(c). *Hunter* was a custody dispute between a birth mother and the children's paternal aunt and uncle, who provided the children with an established custodial environment while the mother was incarcerated and addicted to crack cocaine. *Hunter*, 484 Mich at 252. In the context of this dispute between a parent and third parties, *Hunter* noted that "the parental presumption in MCL 722.25(1) must control over the presumption in favor of an established custodial environment in MCL 722.27(1)(c)." *Id*. at 263. This case involves a postjudgment dispute between two parents "who have the same fundamental rights to the care and custody of the same child." *Varran v Granneman*, 312 Mich App 591, 606; 880 NW2d 242 (2015). As a result, *Hunter* does not apply here.

## V. CUSTODY DETERMINATION

### A. STANDARD OF REVIEW

Pierce argues that the trial court erred by awarding joint physical custody to both her and DeGlopper and by awarding DeGlopper sole legal custody.

> In matters involving child custody, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. This Court will not interfere with the trial court's factual findings unless the facts clearly preponderate in the opposite direction. Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion. In child custody cases specifically, an abuse of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic. Clear legal error occurs when the trial court incorrectly chooses, interprets, or applies the law. This Court reviews the trial court's determination regarding a child's best interests for clear error. This Court gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments. [*Brown v Brown*, 332 Mich App 1, 8-9; 955 NW2d 515 (2020) (quotation marks and citations omitted).]

-4-

## B. ANALYSIS

The Child Custody Act provides a comprehensive statutory scheme for resolving child custody disputes. *Yachcik v Yachcik*, 319 Mich App 24, 51; 900 NW2d 113 (2017). Under this framework, "the overriding concern" is the children's best interests. *McIntosh v McIntosh*, 282 Mich App 471, 475; 768 NW2d 325 (2009). The purposes of the Child Custody Act "are to promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes." *Lieberman v Orr*, 319 Mich App 68, 78; 900 NW2d 130 (2017) (quotation marks and citation omitted). The Child Custody Act also presumes that it will "be in the best interests of a child for the child to have a strong relationship with both of his or her parents." *Luna v Regnier*, 326 Mich App 173, 180; 930 NW2d 410 (2018) (quotation marks and citation omitted).

To protect children's stability, under MCL 722.27(1)(c), as a threshold matter, "when seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Lieberman*, 319 Mich App at 81. On appeal, Pierce asserts that the trial court failed to make a finding of proper cause and change in circumstances. Based on our review of the record, we conclude that although the trial court did not expressly address proper cause or change in circumstances, the trial court's findings evince a factual determination that there was proper cause to revisit custody. See *Vodvarka v Grasmeyer*, 259 Mich App 499, 512; 675 NW2d 847 (2003) (explaining that a proper-cause determination "should be relevant to at least one of the twelve statutory best interest factors" and that it "must be of such magnitude to have a significant effect on the child's well-being."). Specifically, the court found that Pierce had recently begun denying DeGlopper parenting time and making significant, unilateral parental decisions, such as the decision to withdraw the children from their established school. These recent changes, with the potential to have a significant effect on the children's well-being, constituted proper cause or a change in circumstances. Thus, notwithstanding that the trial court certainly should have better facilitated this Court's review by making an express finding regarding proper cause or change in circumstances, the trial court's findings evince a proper cause or change in circumstances that justified revisiting custody.

Even after proper cause or a change in circumstances is shown, the trial court may not alter an established custodial environment unless the moving party shows by clear and convincing evidence that modification is in the child's best interests. MCL 722.27(1)(c); *Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010). To determine a child's best interests, the trial court is required to consider the best-interest factors found in MCL 722.23. *Kessler v Kessler*, 295 Mich App 54, 63-64; 811 NW2d 39 (2011). In cases involving possible joint custody, "the trial court must also consider '[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child.' " *McIntosh*, 282 Mich App at 475, quoting MCL 722.26a(1)(b).

Pierce argues that the trial court erred in its application of the applicable burden of proof. We disagree. The record reflects that the trial court specifically considered the children's established custodial environment, concluding that the children had an established custodial environment with both parents. On this basis, the trial court properly applied a clear and convincing standard when considering whether to modify custody. See MCL 722.27(1)(c).

-5-

Next, Pierce challenges the trial court's best-interest determinations, arguing that the trial court erred by weighing her noncompliance against her on several of the factors and by failing to appropriately weigh DeGlopper's domestic violence. We disagree.

The trial court discussed each factor in detail, finding that several favored DeGlopper, several were neutral, and none favored Pierce. Specifically, the trial court concluded that the parties were equal regarding Factors (a) (love and emotional ties to the children), (c) (capacity to provide food, clothing, and other material needs), (d) (length of time the children lived in a stable environment), (e) (permanence of the family unit), and (g) (mental and physical health of the parties). The trial court also met with the children and considered their preferences under Factor (i). Regarding Factor (k), the court declined to find that Pierce had engaged in domestic violence despite the fact that she had been charged with domestic violence. The trial court expressed "concern" about DeGlopper's "yelling" and use of "angry voices," which the trial court characterized as domestic violence, but the court also found that there was not "enough evidence" of domestic violence to prevent DeGlopper from having custody.

Next, the trial court found that Factor (b) (capacity to give the children guidance) slightly favored DeGlopper because Pierce had shown herself willing to allow the children to do what they wanted, in violation of court orders, which the trial court concluded was not proper guidance. For similar reasons, the trial court concluded that Factor (f) (moral fitness) favored DeGlopper because of Pierce's failure to abide by court orders. Related to Factor (f), the trial court noted that Pierce had criminal charges pending, including charges related to parental retention for her refusal to abide by the trial court's orders in this case. DeGlopper, in comparison, had cut all ties to another child from another relationship, but the court thought this was "understandable" in light of the nature of his relationship with that child's mother and not evidence of poor moral fiber. The court also recognized that DeGlopper had a tendency to be verbally abusive, which the trial court weighed against him under Factor (f), but overall, the trial court nevertheless concluded that Factor (f) favored DeGlopper. The trial court also weighed Factor (h) (home, school, and community record) in DeGlopper's favor in light of Pierce's "very poor judgment" in unilaterally removing the children from school and enrolling them in an unaccredited online program. The court also noted that the children had a tendency to miss days or arrive late to school while in Pierce's care. Regarding Factor (j) (willingness to facilitate parent's relationship with the other parent), in view of Pierce's decision to deny DeGlopper parenting time, the trial court weighed this factor heavily in DeGlopper's favor. Under Factor (*l*) (any other factor considered relevant), the trial court indicated that Pierce had refused to cooperate with a Children's Protective Services investigation. The court also considered the likelihood of the parties exercising parenting time as ordered, and weighed this concern against Pierce.

Weighing all these facts and circumstances, the trial court awarded DeGlopper sole legal custody because Pierce denied DeGlopper parenting time in violation of court orders and unilaterally removed the children from their school. Nevertheless, recognizing that it is typically in the children's best interests to have a strong relationship with both parents, see *Luna*, 326 Mich App at 180, and that depriving Pierce of custody would not be a permissible punishment for her violation of orders, see *Kaiser v Kaiser*, 352 Mich 601, 604; 90 NW2d 861 (1958), the court rejected DeGlopper's request for sole physical custody and ordered joint physical custody with a 50/50 split of parenting time.

Although Pierce argues that the court failed to appropriately weigh DeGlopper's domestic violence, the record shows that the trial court found DeGlopper to be someone who yells and uses an angry voice, which the trial court characterized as a form of domestic violence. The court appropriately considered this concern, but ultimately did not find his behavior to outweigh Pierce's own negative traits, which including pending criminal charges for felonious assault and parental retention. On this record, Pierce has not shown error in the trial court's findings related to domestic violence. See *id*. Lastly, Pierce also contends that the trial court gave too much weight to her noncompliance with court orders. Her noncompliance, and her decision to deprive DeGlopper of parenting time, was, however, an appropriate consideration under several of the best-interest factors.

In sum, considering the record presented, and deferring to the trial court's credibility determinations, we conclude that the trial court's findings were not against the great weight of the evidence, and there is no palpable abuse of discretion or clear legal error on a major issue.

Affirmed. DeGlopper may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron